**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-3311-SBP

AMERICAN TOWERS LLC,
SPECTRASITE COMMUNICATIONS, LLC,
and INSITE WIRELESS GROUP, LLC,

      Plaintiffs,

v.

DISH WIRELESS L.L.C.,

      Defendant.

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT**

Pursuant to D.C.COLO.LCivR 7.2(c), Plaintiffs American Towers LLC, SpectraSite Communications, LLC, and InSite Wireless Group, LLC (collectively, "American Tower"), by and through its undersigned counsel, and with the consent of Defendant DISH Wireless L.L.C. ("DISH"), hereby move this Court to restrict public access to the information concerning the negotiation and terms of a confidential Strategic Collocation Agreement by and between American Tower and DISH (the "SCA"), as described in the Complaint For Declaratory Action and its exhibits filed by American Tower against DISH on October 20, 2025 (Dkt. No. 1) (the "Complaint").

The SCA is a confidential agreement between American Tower and DISH that contains highly sensitive, non-public information concerning business strategies and operations, including competitive pricing information, and other proprietary information. The public disclosure of such information would cause significant and irreparable harm to the parties and their respective

1

competitive standing, which is why the SCA expressly requires the parties to keep its terms confidential.  Accordingly, with DISH's consent, American Tower requests that the Court (i) restrict the SCA (Dkt. No. 1-1) as a Level 1 Restricted Document and (ii) maintain the redactions applied to information concerning the negotiation and terms of the SCA in the publicly filed versions of the Complaint (Dkt. No. 1) and the other exhibits attached thereto (Dkt. Nos. 1-2 through 1-5).[1]  American Tower further requests, with DISH's consent, that the Court restrict under Level 1 Restriction all future filings in this action containing information concerning the negotiation and terms of the SCA and permit corresponding redactions of such information in any publicly filed versions of such filings.

## CERTIFICATE OF CONFERRAL

In accordance with Local Rule 7.1, counsel for American Tower has conferred with counsel for DISH regarding this Motion, and DISH consents to the relief sought herein.

## LEGAL STANDARD

The common-law right of public access to judicial records is not absolute.  *See JetAway Aviation, LLC v. Board of County Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (quoting *Mann v. Boatright*, 477. F.3d 1140, 1149 (10th Cir. 2007)).[2]  Courts may restrict access to judicial records where a party "articulate[s] a real and substantial interest that justifies depriving the public of access to the records," *JetAway*, 754 F.3d at 826, such as where the records contain "business information that might harm a litigant's competitive standing."

---

[1] Information concerning the negotiation and terms of the SCA is contained in Complaint ¶¶ 1, 7–14, 16–18, 38–53, 69, 71–73, 81, and 85; and Exhibits B–E.  The SCA is Exhibit A to the Complaint.

[2] Unless otherwise noted, all quotations and citations have been omitted.

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *SBM Site Servs., LLC v. Garrett*, No. 10-cv-385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011); *Tracy v. Suncor Energy (U.S.A.) Inc.*, No. 20-CV-01597-WJM-NYW, 2021 WL 5140300, at *1 (D. Colo. Nov. 4, 2021); *see also Pine Tele. Co. v. Alcatel-Lucent USA Inc.*, 617 F. App'x 846, 852 (10th Cir. 2015) (same). Courts may also restrict access to documents and information that reveal parties' business negotiations, where disclosure of such information could harm a litigant's competitive standing. *See Crocs, Inc. v. Joybees, Inc.*, No. 1:21-cv-2859-GPG-SP, 2023 WL 11804219, at *1, *3 (D. Colo. June 27, 2023) (allowing motion to restrict documents where documents detail "negotiations related to entering into a retail partnership with that potential customer").

## ARGUMENT

The SCA is a confidential contract that contains sensitive business information, the disclosure of which would harm American Tower's and DISH's respective competitive standing. As detailed herein, (i) restricting access to information concerning the negotiation and terms of the SCA is necessary and appropriate to protect the parties' competitive standing, and (ii) American Tower has proposed narrow and limited redactions to the Complaint to protect the parties' confidential information, and no lesser restriction of such information is practicable.

**I.   DISCLOSURE OF INFORMATION CONCERNING THE NEGOTIATION AND TERMS OF THE SCA WOULD HARM THE PARTIES' COMPETITIVE STANDING**

   **A.  Applicable Law**

It is well-settled that court filings are properly restricted where they include confidential business information and where the disclosure of such information would cause harm to the competitive standing of at least one of the parties to the litigation. *See, e.g.*, *Tracy*, 2021 WL

3

5140300, at *1 (noting that interests that outweigh the public's right of access include "business information that might harm a litigant's competitive standing"); *see also Crocs*, 2023 WL 11804219, at *3 (permitting restriction where "the information for which a restriction is sought . . . detail[s] negotiations related to entering into a retail partnership with that potential customer").[3] In all events, the key inquiry is whether the disclosure of confidential information would cause harm to a party's competitive standing. *See Crocs*, 2023 WL 11804219, at *3 (restriction was appropriate where the document consists of "proprietary and highly confidential information that, if revealed, would harm [the party's] competitive standing").

In addition, a contract's inclusion of confidentiality provisions prohibiting disclosure of the contract's terms is evidence that such disclosure would harm the parties and militates in favor of restriction. *See Boulter LLC v. Kerr-Mcgee Oil & Gas Onshore, LP*, No. 24-cv-01459-SKC-KAS, 2025 WL 2391506, at *9 (D. Colo. Aug. 17, 2025) (granting a motion to restrict materials,

---

[3] *See also Snyder v. Beam Techs., Inc.*, No. 20-cv-03255-NYW, 2022 WL 17741903, at *4 (D. Colo. Dec. 6, 2022) (granting a motion to restrict a stock option agreement with commercially sensitive financial information, including the purchase price and a vesting schedule); *XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-00876-WJM-NYW, 2015 WL 7014419, at *3 (D. Colo. Nov. 12, 2015) (granting a motion to restrict a Commercial License Agreement that contained specific terms of its agreements with business partners, including the price and date of such agreements); *Health Grades, Inc. v. MDx Med., Inc.*, No. 11-cv-00520–PAB–BNB, 2013 WL 154155, *2 (D. Colo. Jan. 15, 2013) (granting a motion to restrict nine license agreements that contained "specific terms of its agreements with its business partners, such as the prices and date of such agreements"); *Boulter LLC v. Kerr-Mcgee Oil & Gas Onshore, LP*, No. 24-cv-01459-SKC-KAS, 2025 WL 2391506, at *7, *9 (D. Colo. Aug. 17, 2025) (granting a motion to restrict materials with "commercially sensitive financial or pricing information" and information on "business strategies, including pricing methods, sales strategies, confidential contract provisions, and other sensitive commercial information"); *Rickaby v. Hartford Life & Accident Ins. Co.*, No. 15-CV-00813-WYD-NYW, 2016 WL 1597589, at *5 (D. Colo. Apr. 21, 2016) (granting a motion to restrict a Consultant Services Agreement that contained "commercially sensitive information and proprietary contracts/internal company manuals").

in part, due to "confidential contract provisions"); *Ubel v. Progressive Direct Ins. Co.*, No. 20-cv-00204-RM-NYW, 2020 WL 9432906, at *2–3 (D. Colo. Sept. 10, 2020) (same).

### B. Disclosure of Information Concerning the Negotiation and Terms of the SCA Would Harm the Competitive Standing of the Parties and Is Prohibited by the SCA.

The SCA is a highly valuable and important long-term contract between DISH and American Tower that contains highly sensitive and non-public information concerning business strategies and operations, including in relation to pricing, volume, fees, escalators, lease rights, equipment, and other financial and proprietary information. For example, the SCA includes heavily negotiated terms concerning, among other things, pricing for licensing fees (SCA § 2(b)), tower equipment (including but not limited to antenna) rights, ground space entitlements, and related fees (SCA §§ 4(a), (b), (d)), additional tower equipment pricing (SCA § 4(c)), microwave dish rights and pricing (SCA § 4(e)), revenue sharing (SCA 4 §(j)), collocation fees (SCA § 4(k)), pricing mechanics, including escalators and reductions (SCA §§ 5(b), (e), (f)), porting rights (SCA § 6), backup power pricing (SCA § 10(b)), and spectrum transfer rights (SCA § 13). And there are countless other terms and provisions throughout the SCA that are highly unique to the specific business relationship between American Tower and DISH.

All of these highly proprietary and heavily negotiated business terms are core to American Tower's business—and, if disclosed, would competitively disadvantage American Tower in numerous ways. Most obviously, disclosure would allow the numerous other tower companies that compete with American Tower for wireless tenants like DISH to obtain invaluable insight into American Tower's business terms with a high value tenant, giving those other tower companies a distinct advantage in competing with American Tower for new and existing tenants. In particular,

5

competitors could copy or undercut American Tower's pricing model or any other of its business terms and processes, severely disadvantaging American Tower in the marketplace. And prospective tenants interested in leasing tower space from American Tower would be able to negotiate against American Tower with specific knowledge into the exact lease terms that it had offered to another high-value tenant. In short, the SCA consists entirely of "proprietary and highly confidential information that, if revealed, would harm [American Tower's] competitive standing" and thus must remain restricted in full. *Crocs*, 2023 WL 11804219, at *3.[4]

DISH is also threatened with competitive harm for generally the same reasons. Disclosure of the SCA's terms would put it at a competitive disadvantage in negotiations and leases with other tower companies and give DISH's competitors invaluable insight into DISH's business. Indeed, the parties expressly included in the SCA a strict confidentiality provision that forbids disclosure of any term in the SCA (SCA § 21), which further militates in favor of restriction. *See Boulter LLC*, 2025 WL 2391506, at *9 (granting motion to restrict where contract prohibited disclosure of its terms); *Ubel*, 2020 WL 9432906, at *2–3 (granting motion to restrict where agreement contained confidentiality provisions).

## II. NO LESSER RESTRICTION OF THE INFORMATION IS PRACTICABLE.

American Tower has taken the least restrictive approach possible to restricting the filings in this action. In fact, American Tower initiated the lawsuit by filing largely-unredacted public

---

[4] Most of the SCA's terms likely constitute trade secrets, as well, including because (i) American Tower has taken great precautions to ensure the confidentiality of this information; (ii) the SCA's terms reflect a significant investment of time and resources by American Tower; (iii) the SCA's terms are confidential; and (iv) absent disclosure of the SCA terms, it would be near impossible for a competitor to acquire or duplicate the terms of the SCA. *See Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1106–07 (D. Colo. 2016) (quoting Colo. Rev. Stat. § 7-72-102(4)).

6

versions of the Complaint and the exhibits, thereby promoting public access to the proceeding. The vast majority of the contents of those filings is available to the public. The redactions that were applied to the public versions are narrow—in some cases, applied only to a word or number—and limited solely to the highly confidential information concerning the negotiation and terms of the SCA described above. No lesser restriction is practicable. *See Crocs*, 2023 WL 11804219, at *4 (finding a party had not taken an "unduly broad approach" in redacting all references to a restricted exhibit that appeared in a separate filing on the docket).[5]

## CONCLUSION

For the foregoing reasons, American Tower respectfully requests that the Court grant American Tower's Unopposed Motion.[6]

Dated: November 3, 2025

Respectfully submitted,

*s/ Heather Carson Perkiins*
Heather Carson Perkins
FAEGRE DRINKER BIDDLE & REATH LLP
1144 Fifteenth Street, Suite 3400
Denver, CO 80202
(303) 607-3500
heather.perkins@faegredrinker.com

---

[5] As set forth above, the SCA should remain under restriction in its entirety because it consists entirely of proprietary and highly confidential information—contained not just in a few provisions of the agreement, but throughout the entire agreement—that, if disclosed, would harm American Tower's competitive standing. Accordingly, maintaining the SCA (Exhibit A, Dkt. No. 1-1) as a Level 1 Restricted Document is appropriate. *Advance Tr. & Life Escrow Servs. LTA v. Security Life of Denver Ins. Co.*, No. 18-cv-01897-DDD-NYW, 2020 WL 7979022, at *1, *6 (D. Colo. Nov. 3, 2020) (restricting the entirety of a document that "reveals [defendant's] confidential and proprietary information").

[6] In the event that the Court denies this Motion in whole or in part, American Tower respectfully requests that the Court not direct the Clerk to un-restrict the presently-restricted filings, but instead, permit American Tower the opportunity to file a new version of the Complaint—removing, to the extent desired or practicable, any information that American Tower does not wish to file publicly—in a manner consistent with the Court's ruling.

David B. Hennes (admission forthcoming)
Andrew S. Todres (admission forthcoming)
ROPES & GRAY LLP
1211 Sixth Avenue
New York, NY 10036
(212) 596-9000
david.hennes@ropesgray.com
andrew.todres@ropesgray.com

Dominique R. Rioux (admission forthcoming)
Christopher M. Durham (admission forthcoming)
Rory T. Skowron (admission forthcoming)
ROPES & GRAY LLP
800 Boylston Street
Prudential Tower
Boston, MA 02199
(617) 951-7000
dominique.rioux@ropesgray.com
christopher.durham@ropesgray.com
rory.skowron@ropesgray.com

*Attorneys for Plaintiffs American Towers LLC, SpectraSite Communications, LLC, and InSite Wireless Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2025, a true and correct copy of the foregoing document was e-filed and served through the CM/ECF system which will service notice on all counsel of record in this case.

/s/ *Veronica Thomas*
Veronica Thomas, Legal Administrative Assistant