UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-3311-SKC-SBP

AMERICAN TOWERS LLC,
SPECTRASITE COMMUNICATIONS, LLC,
and INSITE WIRELESS GROUP, LLC,

Plaintiffs,

v.

DISH WIRELESS L.L.C.,

Defendant.

---

**DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING DECISION
BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Defendant DISH Wireless L.L.C. ("Defendant" or "DISH Wireless") conferred with counsel for Plaintiffs regarding the requested relief to assess whether the parties could agree to a stay of this action pending resolution of Defendant's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407. Counsel for Plaintiffs ("American Tower") indicated that they oppose the motion.

## AI CERTIFICATION

Counsel for Defendant certifies that no portion of this Motion to Stay Proceedings Pending Decision By The Judicial Panel on Multidistrict Litigation was drafted or prepared using generative artificial intelligence.

.

DISH Wireless respectfully moves the Court to stay all proceedings in the above-captioned action pending resolution of Defendant's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 (the "MDL Motion"), filed with the Judicial Panel on Multidistrict Litigation (the "JPML" or "Panel") on March 2, 2026. *See* Defendant's Exhibit A, MDL Case No. 3182, ECF No. 3.

## INTRODUCTION

Beginning in 2019, DISH Wireless (and certain of its affiliates) began working to deploy a nationwide, first-of-its-kind cloud-native Open Radio Access Network-based 5G network. Compl. ¶¶ 30, 31. That network relied on a portfolio of spectrum licenses and related assets that EchoStar, and certain of its affiliates (not including DISH Wireless) (collectively, the "EchoStar Group"), had acquired over a ten-year period, at a cost of over $30 billion, and to which EchoStar Group permitted DISH Wireless access. *See id.* ¶ 32. In order to facilitate the 5G network buildout and operation, DISH Wireless entered into numerous contracts with owners and operators of communications towers throughout the nation, as well as providers of network equipment or services, to secure access to the tower and network infrastructure necessary to operationalize the spectrum for subscribers to its Boost Mobile brand. *See id.* ¶¶ 34–36. As part of that initiative, in March 2021, DISH Wireless and American Tower entered into the Strategic Collocation Agreement. *Id.* ¶ 38.

By 2025, EchoStar Group had timely satisfied all applicable commitments to the Federal Communications Commission (the "FCC") relating to the relevant spectrum licenses. *Id.* ¶ 58. But on May 9, 2025, the Chairman of the FCC sent a letter to EchoStar stating, among other things, that the FCC had initiated a review of EchoStar's licenses to provide 5G service in the United States and threatened the "loss of spectrum licenses and significant financial payments."[1] The FCC's actions were unprecedented and unforeseeable and ultimately required EchoStar Group to sell the relevant spectrum licenses, or have the licenses revoked. Compl., Ex. B at 1. There has never been another instance where the FCC directed a similar license holder to either sell or forfeit its spectrum licenses nationwide.

As a result of the FCC's unprecedented and unforeseeable actions, which were unrelated to any of EchoStar Group's or DISH Wireless's obligations to the FCC, EchoStar Group was required to sell certain of its spectrum licenses to SpaceX and AT&T (the "Required Sales Transactions"). *Id.* The Required Sales Transactions make it impossible for DISH Wireless to continue to build, operate, or pay for a wireless network. *See id.* The purpose of DISH Wireless's contracts with the Towers Providers was completely frustrated, and DISH Wireless's performance under the contracts themselves was rendered commercially impractical, indeed impossible. *See*

---

[1] EchoStar Corp., Current Report (Form 8-K) (May 13, 2025) (filed with the SEC), at 5; available at https://ir.echostar.com/static-files/31f3efd9-c8a8-46c9-926e-634502de1e04.

*id.* The FCC's actions, and the resulting Required Sales Transactions, were a force majeure event.

Against that backdrop, over the past four months, DISH Wireless has been sued by owners and operators of communications towers throughout the nation, as well as providers of network equipment or services, in over a dozen related federal and state lawsuits, including this action, each based on substantially similar allegations and claims, namely that DISH Wireless allegedly breached or defaulted on its obligations under various lease and service agreements by failing to make certain payments allegedly owed under those contracts and/or seeking a declaratory judgment that DISH Wireless is not excused from performing under such lease and service agreements, notwithstanding that DISH Wireless no longer has access to the spectrum that was being operationalized via the lease and service agreements.

On March 2, 2026, Defendant filed the MDL Motion requesting that the Panel transfer this action, as well as seven other related actions that are pending in federal district courts around the country,[2] to the District of Colorado for coordinated

---

[2] *See Aircomm of Avon, LLC, et al. v. DISH Wireless LLC.*, Case No. 1:25-cv-03756 (D. Colo. Nov. 20, 2025) ("*Crown Castle*"); *Comcast Business Communications, LLC v. DISH Wireless LLC*, Case No. 1:26-cv-00824 (D. Colo. Feb. 27, 2026) ("*Comcast*"); *DataVerge LLC v. DISH Wireless LLC*, Case No. 26-cv-1168 (E.D.N.Y. Feb. 27, 2026) ("*DataVerge*"); *Seidner Properties LP v. DISH Wireless LLC*, Case No. 8:26-cv-00082 (C.D. Ca. Jan. 9, 2026) ("*Seidner*"); *Royal Group Plaza, LLC v. DISH Wireless LLC*, Case No. 2:26-cv-01092 (C.D. Cal. Feb. 3, 2026) ("*Royal Group*"); *Sabre Industries, Inc. v. DISH Wireless Leasing LLC*, Case No. 1:26-cv-00209 (S.D.N.Y. Jan. 12, 2026) ("*Sabre*"); and *SBA Telecommunications, LLC, et al. v. DISH Wireless LLC*, Case No. 1:26-cv-00218 (W.D.N.Y. Feb. 5, 2026) ("*SBA*").

proceedings before the Honorable Nina Y. Wang, who presides over the most procedurally advanced of the cases, *Crown Castle*, or in the alternative, before this Court, which presides over the first-filed action. *See* Defendant's Exhibit A, ECF No. 3, at 1. The Panel has ordered oppositions to the MDL Motion be filed by April 8, 2026, and Defendant's reply is due on April 15, 2026. *See* MDL Case No. 3182, ECF No. 21.

Defendant is likely to prevail on the MDL Motion because all eight related actions rest on the same fundamental factual questions, such as: Did the FCC require EchoStar to divest its spectrum assets? Were the Required Sales Transactions "voluntary" business decisions, or were they required by the government? Was EchoStar's potential loss of its spectrum licenses contemplated or foreseeable to DISH Wireless when it entered its contracts with the Towers Providers? And, ultimately, did the FCC's actions, and the resulting Required Sales Transactions make it impossible for DISH Wireless to build, operate, or pay for a 5G wireless network? *See* Defendant's Exhibit A, ECF No. 3-1, at 2-3. The District of Colorado is also the most likely venue for the consolidated proceedings because it is, among other considerations, the location of all defendants to the MDL, the majority of the alleged conduct, and the most related actions (three federal cases and four state actions). *Id.* at 3.

For the reasons set forth below, this case should be stayed pending a determination by the Panel on the MDL Motion. Staying this case will preserve the

4

Court's and parties' resources by preventing inconsistent pretrial rulings and ensuring that the parties conduct discovery just once, after all cases have been consolidated before a court in the District of Colorado or another jurisdiction.

Since Defendant filed the MDL Motion on March 2, 2026, courts in two of the related actions have already issued stays of all proceedings pending the Panel's decision, upon the joint request of the parties. *See Seidner*, ECF No. 23, *Order Granting Joint Stipulation for Stay of Proceedings*; *DataVerge*, ECF No. 10, *Order Granting Joint Stipulation Regarding Stay of All Proceedings*. Last month, Defendant filed two additional Motions to Stay in the District of Colorado: one in *Crown Castle*, for which oral argument is scheduled on May 12, 2026, and another in *Comcast*, for which the court ordered expedited briefing and scheduled oral argument on April 23, 2026. *See Crown Castle*, ECF No. 74; *Comcast*, ECF No. 26. Most recently, Defendant filed Motions to Stay in *SBA*, pending in the Western District of New York, and *Sabre*, before the Southern District of New York, on March 27, 2026 and April 1, 2026, respectively. *See SBA*, ECF No. 15; *Sabre*, ECF No. 14.

## PROCEDURAL BACKGROUND

This case is in its initial stages. The Complaint was filed on October 20, 2025. *See* ECF No. 1. Defendant answered the Complaint on December 8, 2025, denying all allegations and pleading seven affirmative defenses. *See* ECF No. 21. Plaintiffs filed a Motion for Judgment on the Pleadings on December 12, 2025, *see* ECF No. 22. Defendant opposed that Motion on January 19, 2026, *see* ECF No. 36, and Plaintiffs

filed their reply on February 6, 2026.  *See* ECF No. 43.  Oral argument has not been scheduled.  Similarly, a date for any Rule 26(f) Scheduling Conference has not been set.

## ARGUMENT

As a general matter, "courts frequently grant stays pending a decision by the [Panel] regarding whether to transfer a case."  *Bunnell Bunnell v. Future Motion, Inc.*, No. 22-cv-01220, 2023 WL 7279354, at *1 (D. Colo. Nov. 3, 2023) ("[T]he Court has been unable to find … a single case from within the District of Colorado denying a stay where a motion to transfer proceedings is pending before the JPML.  Rather, stays are routinely granted under the same or similar circumstances.").  Courts regularly exercise their "broad discretion" to "control [their] own docket" in these circumstances because the "interests of judicial economy are best served by granting a stay pending [an] MDL Panel's decision."  *Cheney v. Eli Lily & Co.*, No. 14-cv-02249, 2014 WL 7010656, at *1 (D. Colo. Dec. 9, 2014); *Lundy v. C.B. Fleet Co., Inc.*, No. 09-cv-00802, 2009 WL 1965521, at *1 (D. Colo. July 6, 2009).

In determining whether to grant a stay of all proceedings pending the Panel's decision on transfer and consolidation, courts in this district consider: "(1) the interest of the plaintiff in proceeding expeditiously with discovery and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the Court of staying discovery; (4) the interests of non-parties in either staying or proceeding with discovery; and (5) the public interest in either staying or proceeding

with discovery." *Sykes v. LivaNova Deutschland GmbH*, No. 17-cv-02437, 2018 WL 286791, at *1 (D. Colo. Jan. 4, 2018) (citing *String Cheese Incident v. Stylus Shows, Inc.*, No. 1:02-CV-01934, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).  Each of these factors weighs in favor of a stay of this action.

### A.    The Temporary Stay Of Proceedings Will Not Prejudice Plaintiffs

A temporary stay of this action will not cause any particularized or specific prejudice to Plaintiffs or their ability to conduct discovery.  Plaintiffs cannot identify "any specific prejudice they would likely incur with respect to the merits of their case based simply on a delay of deadlines." *Bunnell Bunnell*, 2023 WL 7279354, at *2; *Masciotra v. Vertafore, Inc.*, No. 20-cv-03603, 2021 WL 3887949, at *2 (D. Colo. Feb. 3, 2021) (rejecting plaintiffs' "vague" prejudice claim because "they have provided no specific examples of how their ability to conduct discovery might be adversely affected by a stay"); *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081, 2010 WL 148278, at *1 (D. Colo. Jan. 7, 2010) (same).  Notably, a postponement of deadlines or a delayed decision on a substantive motion are insufficient to outweigh the prejudice to a defendant from defending multiple litigations pending the Panel's decision on consolidation.  *See Bunnell Bunnell*, 2023 WL 7279354, at *2-3 (finding no prejudice to plaintiff where stay would require postponing close of discovery, expert deadlines, and summary judgment); *Council v. Target Corp.*, No. 13-cv-03479, 2014 WL 859326, at *2 (D. Colo. Mar. 5, 2014) (rejecting argument that ruling on motion or expedited

discovery are necessary to prevent prejudice to plaintiffs); *Masciotra*, 2021 WL 3887949, at \*2 (finding no prejudice to plaintiff "beyond a *de minimis* level" because the Rule 26(f) conference had not yet occurred, no discovery schedule has been entered, and "briefing on the [Motion to Transfer] will be complete shortly").

This case is in its initial stages. A Rule 26(f) conference has not been scheduled, and the Court has yet to schedule oral argument or rule on Plaintiffs' Motion for Judgment on the Pleadings. Moreover, this action is based on events that took place less than one year ago; Defendant has instituted the appropriate litigation holds, and the information Plaintiffs may seek in discovery will be no less available to them in the few months necessary for the Panel to rule on the pending MDL Motion, which will be fully briefed in less than a month, and consolidate the cases in an MDL proceeding. *See Stone*, 2010 WL 148278, at \*1 (no prejudice where plaintiff argued "with the passage of time, the memories of the parties and other witness may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed")

Additionally, Defendant has moved to transfer and consolidate the related actions in Plaintiffs' own chosen forum, the District of Colorado. Thus, a temporary stay and grant of Defendant's MDL Motion will likely conclude with the consolidated litigation proceeding in this district.

8

**B.      A Denial Of Proposed Stay Will Increase The Possibility Of Inconsistent Rulings And Impose Discovery Burdens On Defendant**

Defendant will face significant hardship if the proposed stay is not granted.  As noted, this case, like the other seven federal actions subject to the MDL Motion, is premised on substantially similar allegations and claims, namely that DISH Wireless has allegedly breached or defaulted on its obligations under various lease and service agreements by failing to make certain payments allegedly owed under those contracts, and/or seeking a declaratory judgment that DISH Wireless is not excused from performing under such lease and service agreements, notwithstanding the fact that DISH Wireless no longer has access to the spectrum that was being operationalized on the towers.  Denial of the proposed stay will create a significant risk of inconsistent rulings on substantive and discovery motions, as well as substantial duplication of effort and a waste of judicial and party resources.[3]

*Masciotra v. Vertafore, Inc.* is instructive.   There, the court granted a defendant's motion to stay pending resolution of a motion to transfer where no pretrial discovery schedule had been set because the typical burdens of discovery

---

[3] Though Defendants have moved the Panel to transfer the consolidated proceedings to the District of Colorado and potentially before this Court, continuing pretrial proceedings in this action risks inconsistent pretrial rulings and duplicated efforts if the cases are transferred to another court.  *See Musticchi v. Wright Med. Tech., Inc.*, No. 4:19-cv-00607, 2020 WL 13111224, at *1 (E.D. Ark. July 2, 2020) (stay granted by proposed transferee court to postpone "significant time and effort on pretrial matters over the next several months, efforts that would be potentially wasted if the MDL Motion is granted and the cases are transferred to another court").

9

would be "compounded by subjecting Defendant to multiple suits in various judicial districts, which increases the possibility of increasingly inconsistent rulings and discovery obligations." 2021 WL 3887949, at *2. Rejecting plaintiffs' claims to the contrary, the court noted that its "experience suggests that coordinating discovery efforts between multiple jurisdictions adds complexity even to routine matters." *Id. See also Council,* 2014 WL 859326, at *1-2 ("[T]he burden on [d]efendant in proceeding with this case outweighs any prejudice to [p]laintiff by a brief stay of this matter pending ruling by the JPML" where defendant would be "required to engage in duplicative litigation, and there is a serious risk of inconsistent or contradictory decisions"); *Fontenot*, 2024 WL 6990724, at *1 ("Staying [proceedings] will promote the interests of judicial economy, efficiency, and consistency between courts…any potential prejudice to Plaintiffs caused by the stay is outweighed by the risk of inconsistent judgments and the interest of judicial economy.").

Here, Defendant will suffer prejudice if required to defend three actions based on substantially similar allegations and claims in the District of Colorado alone (not to mention the three other related actions in other federal courts that have not yet been stayed), while the MDL Motion is pending. Without a temporary stay of this action, once a discovery schedule is set in this action, Defendant will be required to participate in the discovery process and, among other obligations, respond to requests that are likely to be duplicated by plaintiffs in the other actions pending transfer and consolidation. *See Bunnell Bunnell*, 2023 WL 7279354, at *2 (finding prejudice to

10

defendant where it would "incur the burden and expense of discovery which would be duplicative of discovery once an MDL is created" and risk "inconsistent or contradictory decisions during the course of discovery"); *Lundy*, 2009 WL 1965521, at *1 (granting stay to, *inter alia*, "avoid duplicative discovery efforts").

### C.    A Stay Will Preserve Judicial Resources

A stay will conserve judicial resources and convenience the Court.  Staying this action will further judicial economy and efficiency because, if the Panel grants the MDL Motion, this proceeding and the seven other related actions likely will be consolidated before a court in the District of Colorado.[4]  Two other district courts have already granted stays of related actions pending consolidation, oral argument is scheduled on Defendant's motions to stay in two other proceedings, and briefing is in progress for two additional motions to stay.  *See Seidner*, ECF No. 23, *Order Granting Joint Stipulation for Stay of Proceedings*; *DataVerge*, ECF No. 10, *Order Granting Joint Stipulation Regarding Stay of All Proceedings*; *Crown Castle*, ECF No. 74, *Minute Order Setting Motion Hearing on Defendants' Motion to Stay; Comcast*, ECF

---

[4] Notably, a Colorado state court recently ordered consolidation of two related state cases that also arise out of the exact same transactions based on, *inter alia*, their factual similarities.  *See* Defendant's Exhibit B, *Zayo Group, LLC v. DISH Wireless L.L.C*, 2025CV34300, Feb. 11, 2026 Order Granting Motion to Consolidate (Colo. Dist. Ct., 2d Jud. Dist.) ("In both this action and the related Diamond Action, DISH [Wireless] is relying on the same underlying facts in an attempt to terminate its contractual obligations with Zayo and the Diamond Entities under the doctrines of force majeure, impossibility and frustration of purpose. It is therefore in the interests of litigation efficiency and judicial economy for this action and the related Diamond Action to be consolidated.")

11

No. 26, *Minute Order Setting Expedited Briefing Schedule and Motion Hearing on Defendants' Motion to Stay; SBA*, ECF No. 15, *Motion to Stay Proceedings Pending Decision by the Judicial Panel on Multidistrict Litigation*; *Sabre*, ECF No. 13 (same).

If this action were not stayed, this Court may be required to adjudicate substantive issues and preside over discovery efforts that will be duplicated once all other parties and cases have been consolidated into the MDL. It would be much more efficient to conduct discovery on a uniform schedule, once all cases have been consolidated in the District of Colorado. *See Lundy*, 2009 WL 1965521, at *1 (holding that stay pending the Panel's decision will allow the court to avoid "duplicative discovery efforts, unnecessary expenditures of judicial resources and the parties, and [to] maximize judicial economy among the courts"); *see also Masciotra*, 2021 WL 3887949, at *3 (granting stay to avoid the risk of "inconsistent pretrial determinations – such as discovery limitations, scheduling, and the resolution of disputes"); *Deutsche Bank Tr. Co. Am. v. Fushimi*, No. 11-cv-02472, 2011 WL 5864987, at *3 (D. Colo. Nov. 22, 2011 ("[A]voiding the risk of inconsistent judgments and the interests of judicial economy will ordinarily outweigh any slight delay caused by a stay pending an MDL panel's ruling."); *F.D.I.C. v. Countrywide Fin. Corp.*, No. 11-cv-02268, 2011 WL 4372915, at *3 (D. Colo. Sept. 19, 2011) ("Judicial resources would best be conserved by imposing a stay until the transfer issue is resolved so that, if the transfer is finalized, the JPML court can determine all pretrial matters in a coordinated manner.").

12

**D.      The Interests Of Non-Parties And The Public Support A Stay**

A stay will also serve the interests of a relevant non-party to this litigation and the public.  As discussed above, *supra* at pp. 2-4, the issues in this proceeding and the seven related federal actions pending consolidation are related to the FCC's unprecedented and unforeseeable actions that made it impossible for DISH Wireless to perform its obligations under various lease and service agreements.  In the first related action to enter discovery, Plaintiffs have sought discovery related to Defendants' communications with the FCC.  *See* Defendant's Exhibit C, *Crown Castle*, Defendants' Motion to Stay Proceedings Pending Decision by the Judicial Panel on Multidistrict Litigation, ECF No. 72, at 13; *id.*, Crown Castle Plaintiffs' First Requests for Production, ECF No. 72-2, at 11–13.  Plaintiffs here are likely to do the same, and Defendant may also seek third-party discovery from the FCC to prove its case, both in this litigation and the seven related actions.  The FCC has an interest in participating in third-party discovery in one consolidated litigation, rather than duplicating efforts across, at minimum, seven federal actions.  *See Ratcliff v. Brown*, No. 23-cv-00605, 2023 WL 6314566, at *5 (D. Colo. Sept. 28, 2023) (granting stay where non-parties' witnesses may otherwise "have been burdened with discovery unnecessarily").

Further, the public has an interest in "avoiding wasteful efforts by the Court" and the "efficient and just resolution" of this litigation.  *F.D.I.C.*, 2011 WL 4372915, at *3 (finding the public interest weighs in favor of staying case); *see also Ratcliff*,

13

2023 WL 6314566, at *5 (granting stay where continued litigation might "unnecessarily tap[]" public funds "in connection with the expenditure of judicial resources" and "participation by non-party witnesses employed by public entities"). A stay of this action pending the Panel's resolution of the MDL Motion serves those interests.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for an order that temporarily stays these proceedings pending the Panel's determination as to whether to consolidate and transfer this action pursuant to 28 U.S.C. § 1407.

14

Dated:  April 9, 2026.                    Respectfully submitted,


                                          */s/ Joshua D. Weedman*
                                          Hugh Q. Gottschalk
                                          Jacob A. Rey
                                          Wheeler Trigg O'Donnell LLP
                                          370 Seventeenth Street, Suite 4500
                                          Denver, CO 80202
                                          Telephone: 303.244.1800
                                          Facsimile:  303.244.1879
                                          Email: gottschalk@wtotrial.com
                                                  rey@wtotrial.com

                                          Glenn M. Kurtz
                                          Joshua D. Weedman
                                          Robert E. Tiedemann
                                          Camille M. Shepherd
                                          White & Case LLP
                                          1221 Avenue of the Americas
                                          New York, NY 10020-1095
                                          Telephone: 212.819.8200
                                          Email: gkurtz@whitecase.com
                                                  jweedman@whitecase.com
                                                  rtiedemann@whitecase.com
                                                  camille.shepherd@whitecase.com

                                          Attorneys for Defendant DISH Wireless
                                          L.L.C.

15

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on April 9, 2026, I electronically filed the foregoing

Defendant's Motion to Stay Proceedings Pending Decision by the Judicial Panel on

Multidistrict Litigation with the Clerk of Court using the CM/ECF system which will

serve notice on all counsel of record in this case.


*/s/ Joshua D. Weedman*