**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03311-SKC-SBP

AMERICAN TOWERS LLC,
SPECTRASITE COMMUNICATIONS, LLC,
INSITE WIRELESS GROUP, LLC,
52 EIGHTY TOWER PARTNERS I, LLC,
ACC TOWER SUB, LLC,
AMERICAN TOWER ASSET SUB, LLC,
AMERICAN TOWER ASSET SUB II, LLC,
AMERICAN TOWER DELAWARE CORPORATION,
AMERICAN TOWER MANAGEMENT, LLC,
ATC GREEN GRASS LLC,
ATC IRIS I LLC,
ATC PONDEROSA B-I LLC,
ATC SEQUOIA LLC,
ATC SOUTH LLC,
ATC WATERTOWN LLC,
CALIFORNIA TOWER, INC.,
CENTRAL STATES TOWER HOLDINGS, LLC,
CNC2 ASSOCIATES, LLC,
DCS TOWER SUB, LLC,
GLOBAL TOWER ASSETS, LLC,
GLOBAL TOWER ASSETS III, LLC,
GRAINCOMM I, LLC,
GRAINCOMM II, LLC,
GRAINCOMM III, LLC,
GRAINCOMM MARKETING, LLC,
GTP ACQUISITION PARTNERS II, LLC,
GTP ACQUISITION PARTNERS III, LLC,
GTP INFRASTRUCTURE I, LLC,
GTP INFRASTRUCTURE II, LLC,
GTP SOUTH ACQUISITIONS II, LLC,
GTP STRUCTURES I, LLC,
GTP TOWERS I, LLC,
GTP TOWERS II, LLC,
GTP TOWERS IV, LLC,
GTP TOWERS V, LLC,
GTP TOWERS VII, LLC,
GTP TOWERS VIII, LLC,

INSITE TOWERS, LLC,
INSITE TOWERS DEVELOPMENT LLC,
INSITE TOWERS DEVELOPMENT 2, LLC,
IWG II, LLC,
IWG TOWERS ASSETS I, LLC,
IWG TOWERS ASSETS II, LLC,
MHB TOWER RENTALS OF AMERICA, LLC,
MUNICIPAL BAY, LLC,
NEW TOWERS LLC,
PCS STRUCTURES TOWERS, LLC,
TOWERS OF AMERICA, L.L.L.P.,
UNISITE, LLC,
VANGARD WIRELESS, LLC,
ALTERNATIVE NETWORKING LLC,
ATC MANAGED SITES LLC,
ATC PONDEROSA K LLC,
ATC XYZ LLC,
CELL TOWER LEASE ACQUISITION LLC,
GLOBAL TOWER HOLDINGS, LLC,
GTP STRUCTURES II, LLC,
GTPI HOLDCO, LLC,
IWG-TLA TELECOM, LLC,
ULYSSES ASSET SUB I, LLC,
ULYSSES ASSET SUB II, LLC,
REPEATER COMMUNICATIONS GROUP II, LLC,
REPEATER COMMUNICATIONS GROUP III, LLC,
REPEATER COMMUNICATIONS GROUP VI, LLC,
and T8 ULYSSES SITE MANAGEMENT LLC,

       Plaintiffs,

v.

DISH WIRELESS L.L.C., and ECHOSTAR CORPORATION,

       Defendants.

---

**DEFENDANT ECHOSTAR CORPORATION'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 4

LEGAL STANDARD............................................................................................. 5

ARGUMENT ......................................................................................................... 7

    A.    The First Amended Complaint Fails Adequately To Plead That
        EchoStar Caused DISH Wireless To Assert Any Contractual
        Defenses ..................................................................................................... 7

    B.    The First Amended Complaint Fails To Plead Tortious
        Interference Because It Is Not A Tort To Assert A Defense To
        Contractual Performance ............................................................................ 9

    C.    The First Amended Complaint Fails To Plead That EchoStar
        Acted With The Specific Intent To Harm American Towers'
        Contract .................................................................................................... 11

    D.    The First Amended Complaint Fails To Plead Improper
        Interference .............................................................................................. 12

    E.    American Towers' Allegations Establish That EchoStar's
        Conduct Was Privileged .......................................................................... 15

CONCLUSION..................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*ACS Invs., Inc. v. McLaughlin*,
  943 S.W.2d 426 (Tex. 1997) .............................................................................. 10

*Ascente Bus. Consulting, LLC v. DR myCommerce*,
  2018 WL 3597674 (D. Minn. July 26, 2018)...................................................... 16

*Avery Dennison Corp. v. Juhasz*,
  924 F. Supp. 2d 893 (N.D. Ohio 2013)................................................................ 6

*Bourne v. Gardner*,
  270 F. Supp. 3d 385 (D. Mass. 2017)................................................................ 13

*Brown v. Wilson*,
  2014 WL 6806899 (D. Colo. Dec. 2, 2014) ......................................................... 5

*Buster v. George W. Moore, Inc.*,
  783 N.E.2d 399 (Mass. 2003) .............................................................................. 6

*Centimark Corp. v. Hilfer*,
  2026 WL 145713 (D. Colo. Jan. 20, 2026) .......................................................... 8

*Covelo Clothing, Inc. v. Midcap Credit LLC*,
  2018 WL 11714638 (Colo. App. Ct. Mar. 1, 2018).................................... 13, 14

*Downtown Aspen Invs. v. Aspen Legacy Holdings*,
  2011 Colo. Dist. LEXIS 2143 (Colo. Dist. Ct. Nov. 29, 2011) .............. 10, 15, 15

*DTC Energy Grp., Inc. v. Hirschfeld*,
  420 F. Supp. 3d 1163 (D. Colo. 2019) ................................................................. 8

*Eaton Vance Senior Income Tr. v. Saba Cap. Master Fund, Ltd.*,
  2021 WL 2785120 (Mass. Super. Ct. Apr. 7, 2021)............................................ 8

*eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*,
  519 F. Supp. 3d 1129 (S.D. Fla. 2021)................................................................ 6

*Fundient Inv. LLC v. Ouiby, Inc.*,
　　2024 WL 3936668 (D. Colo. Aug. 26, 2024) .................................................. 12, 16

*Gerson v. Logan River Acad.*,
　　20 F.4th 1263 (10th Cir. 2021) ............................................................................ 15

*GT Res. LLC v. Black Hills Corp.*,
　　2023 WL 12052529 (Colo. App. Oct. 19, 2023) ................................................... 15

*Hamann v. Carpenter*,
　　2018 WL 2012689 (D. Mass. Apr. 30, 2018) ...................................................... 13

*Insight Glob. LLC v. McDonald*,
　　2018 WL 2092486 (D. Colo. May 3, 2018) ......................................................... 12

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
　　2020 WL 4584354 (D. Del. Aug. 10, 2020) .......................................................... 6

*James Cable, LLC v. Millennium Dig. Media Sys., LLC*,
　　2009 WL 1638634 (Del. Ch. June 11, 2009) ........................................................ 9

*Kansas Penn Gaming, LLC v. Collins*,
　　656 F.3d 1210 (10th Cir. 2011) ............................................................................. 5

*Nairn v. JPMorgan Chase & Co.*,
　　2025 WL 4091216 (D. Colo. Feb. 12, 2025) ........................................................ 6

*Nat. Wealth Real Estate, Inc. v. Cohen*,
　　2006 WL 3500624 (D. Colo. Dec. 4, 2006) .......................................................... 6

*PPL Corp. v. Riverstone Holdings LLC*,
　　2019 WL 5423306 (Del. Ch. Oct. 23, 2019) ......................................................... 9

*Redcloud Cap., LLC v. Fruition Partners, LLC*,
　　2022 WL 20087990 (Colo. Dist. Ct. June 27, 2022) ......................................... 11

*Rodden v. Savin Hill Enter., LLC*,
　　2016 WL 1688688 (Mass. Super. Ct. Apr. 21, 2016) ........................................ 13

*Rodriguez v. Bar-S Food Co.*,
　　539 F. Supp. 710 (D. Colo. 1982) ....................................................................... 15

ii

*S.J. Glauser DCJB, LLC v. Porsche Cars N. Am., Inc.*,
    2006 WL 1816458 (D. Colo. June 30, 2006) ...................................................... 13

*SELCO Community Credit Union v. Noodles & Co.*,
    267 F. Supp. 3d 1288 (D. Colo. 2017) ................................................................ 7

*Shearin v. E.F. Hutton Grp. Inc.*,
    652 A.2d 578 (Del. Ch. 1994) ............................................................................ 16

*Slayton v. Bayfield Sch. Dist.*,
    2024 WL 4979422 (D. Colo. Dec. 4, 2024) ........................................................ 15

*TalentBurst, Inc. v. Collabera, Inc.*,
    567 F. Supp. 2d 261 (D. Mass. 2008) ................................................................ 13

*Tufco L.P. v. Reckitt Benckiser (ENA) B.V.*,
    2023 WL 4304751 (E.D. Wis. June 30, 2023) ................................................ 8, 9

*United Truck Leasing Corp. v. Geltman*,
    551 N.E.2d 20 (Mass. 1990) .............................................................................. 10

**STATUTES**

11 U.S.C. § 101 ......................................................................................................... 2

11 U.S.C. § 362(a) .................................................................................................... 2

## CERTIFICATE OF CONFERRAL

Pursuant to the Honorable S. Kato Crews Uniform Civil Practice Standard 7.1B(b), counsel for EchoStar Corporation conferred with counsel for American Towers regarding the requested relief to assess whether the defects could be cured through the filing of an amended pleading.  Counsel for American Towers indicated that they oppose the motion.

## AI CERTIFICATION

Pursuant to the Court's Standing Order for Civil Cases, undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

## INTRODUCTION

Defendant EchoStar Corporation ("EchoStar") and certain of its affiliates historically provided DISH Wireless L.L.C. ("DISH Wireless") with access to certain of EchoStar's wireless spectrum to support DISH Wireless's efforts to build out a 5G mobile network.  DISH Wireless entered into site lease agreements with parties across the country, including plaintiffs American Towers LLC and its affiliated entities listed in the caption above (collectively, "American Towers" or "Plaintiffs"), in connection with the 5G network buildout and operation.

In the summer of 2025, the Federal Communications Commission (the "FCC") instructed EchoStar that it had to sell its spectrum licenses or else have them revoked.  EchoStar fought back against this mandate and worked diligently to maintain its spectrum licenses, but ultimately it had no choice but to sell the licenses to buyers approved by the FCC (the "Required Sales Transactions").  EchoStar then no longer had spectrum to provide to DISH Wireless.  The Required Sales Transactions, thus, frustrated the purpose of DISH Wireless's contract with American Towers, constituted a force majeure event, and eliminated DISH Wireless's ability to utilize the towers it had leased.  DISH Wireless simply has no access to the spectrum necessary to operate its business.  Indeed, DISH Wireless has filed a

chapter 11 petition for bankruptcy protection, and this proceeding against it is subject to the resulting automatic stay.[1]  *See* 11 U.S.C. § 362(a)(1)–(3).

American Towers filed a first amended complaint ("First Amended Complaint" or "FAC") against DISH Wireless for failure to make certain payments under the parties' Strategic Collocation Agreement and related license agreements (together, the "SCA").  Plaintiffs also seek a declaratory judgment that DISH Wireless's performance is not excused by the force majeure event triggered by the FCC's actions, or any other affirmative defenses, even though there is no conceivable way for DISH Wireless to perform.  Additionally, as is relevant here, American Towers sued EchoStar, DISH Wireless's ultimate parent company, for tortious interference with

---

[1] On June 30, 2026, DISH Wireless and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). *See* Dkt. No. 77 ("Notice of Bankruptcy Filing and Automatic Stay of Proceedings for DISH Wireless L.L.C. and Certain of Its Affiliates").  Pursuant to section 362(a) of the Bankruptcy Code, the Debtors' filing of their respective voluntary petitions automatically operates as a stay, applicable to DISH Wireless.  *See id.*; 11 U.S.C. § 362(a).  The Debtors assert that all action against EchoStar in this proceeding is stayed by operation of the Automatic Stay.  The Debtors intend to promptly seek confirmation from the Bankruptcy Court seeking confirmation of the application of the Automatic Stay to the claims against EchoStar in this proceeding.  As such, the Debtors believe that Defendant's deadline to file this Motion is stayed.  *See* Dkt. No. 77 ("Notice of Bankruptcy Filing and Automatic Stay of Proceedings for DISH Wireless L.L.C. and Certain of Its Affiliates").  However, Defendant files this Motion in compliance with the default deadline under the applicable rules in an abundance of caution and to avoid any argument of default, pending guidance from the Bankruptcy Court.  Defendant respectfully submits that this Court should withhold judgment on this Motion pending the Bankruptcy Court's guidance on the scope of the Automatic Stay.

DISH Wireless's contract with Plaintiffs, effectively seeking unilaterally to impose a parent guarantee of DISH Wireless's contract on EchoStar that does not exist. American Towers' claim against EchoStar fails for multiple reasons.

*One*, American Towers' tortious interference claim is premised on its allegation that EchoStar "orchestrated" DISH Wireless in asserting force majeure and frustration of purpose defenses, which American Towers claims are baseless. The FAC fails to adequately plead that EchoStar caused DISH Wireless to assert anything. Indeed, the FAC does not identify any such alleged communication. *See infra* Section A.

*Two*, causing one to assert contractual defenses to a contract is not tortious. Parties are free to raise defenses to contracts, which can be accepted or litigated. Moreover, raising the defenses did not interfere with DISH Wireless's performance. DISH Wireless has no access to the spectrum, so it cannot perform, regardless of whether it raised legal defenses to performance. *See infra* Section B.

*Three*, the FAC does not allege that EchoStar acted with the intent to interfere with DISH Wireless's contract with Plaintiffs, as required. In fact, the FAC alleges the opposite by acknowledging that EchoStar made a "business decision" "by selling the spectrum…[for] $40 billion." *See infra* Section C.

*Four*, the FAC does not plausibly allege that EchoStar's conduct was improper. Indeed, American Towers' own allegations defeat any claim of tortious conduct because the FAC alleges that EchoStar's conduct was motivated by legitimate

3

business interests—precisely the sort of profit-motivated conduct that does not support a finding of tortious conduct. *See infra* Section D.

*Five*, EchoStar's alleged conduct is protected by Colorado's financial interest privilege, which shields a parent company's intervention in a subsidiary's affairs undertaken to protect its own legitimate financial interests. *See infra* Section E.

As set forth more fully below, the claim for tortious interference against EchoStar should be dismissed.

## BACKGROUND

Beginning in 2019, DISH Wireless (and certain of its affiliates) began working to deploy a nationwide, first-of-its-kind cloud-native Open Radio Access Network-based 5G network. FAC ¶ 103. That network relied on a portfolio of spectrum licenses and related assets that EchoStar, and certain of its affiliates (not including DISH Wireless) (collectively, the "EchoStar Group"), had acquired over a ten-year period, at a cost of over $30 billion, and to which EchoStar Group permitted DISH Wireless access. FAC ¶ 104. In connection with the 5G network buildout and operation, on March 12, 2021, DISH Wireless and American Towers entered into the SCA. FAC ¶ 110.

By 2025, EchoStar Group had satisfied all applicable commitments to the FCC relating to the relevant spectrum licenses. But in the summer of 2025, the FCC abruptly took unprecedented and unforeseeable action that ultimately required EchoStar Group to sell the relevant spectrum licenses or have them revoked. FAC

4

¶¶ 131–136.  On May 9, 2025, the Chairman of the FCC sent a letter to EchoStar stating, among other things, that he had "directed agency staff to begin a review of EchoStar's compliance with its federal obligations to provide 5G service throughout the United States per the terms of its federal spectrum licenses."  FAC ¶ 131.

As a result of the FCC's unprecedented and unforeseeable actions, which were unrelated to any of EchoStar Group's obligations to the FCC, EchoStar Group was required to enter into the Required Sales Transactions.  FAC ¶¶ 131–136.  The Required Sales Transactions make it impossible for DISH Wireless to continue to build, operate, or pay for a wireless network.

## LEGAL STANDARD

"The Tenth Circuit has instructed that to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face."  *Brown v. Wilson*, 2014 WL 6806899, at *3 (D. Colo. Dec. 2, 2014) (citing *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  In other words, a plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level."  *Id.*  In determining whether a complaint states a plausible claim for relief, the Court must "draw on its judicial experience and common sense," and "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Id.*

5

The law governing American Towers' tortious interference claim against EchoStar is that of the jurisdiction where the injury occurred—Massachusetts, where the majority of American Towers' entities maintain their principal place of business and where the alleged economic harm was felt.  FAC ¶¶ 29–94; *see also e.g.*, *Nat. Wealth Real Estate, Inc. v. Cohen*, 2006 WL 3500624, at *3–4 (D. Colo. Dec. 4, 2006) (finding "plaintiffs suffered alleged injury predominantly…where they reside" and thus plaintiffs' "principal place of business [ ] has the most significant relationship to the alleged wrongdoing" in tortious interference claim); *see also Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 2020 WL 4584354, at *8 (D. Del. Aug. 10, 2020) ("[W]here the loss is pecuniary in nature, as it is in a tortious interference claim, the injury will normally be felt most severely at the plaintiff's headquarters or principal place of business."); *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1134 n.4 (S.D. Fla. 2021) (plaintiff's principal place of business was where alleged economic injury was felt); *Avery Dennison Corp. v. Juhasz*, 924 F. Supp. 2d 893, 898 (N.D. Ohio 2013) (applying law of plaintiff's place of business, which was location of injury from alleged interference).  However, because Massachusetts and Colorado law do not materially conflict with respect to the elements of tortious interference,[2] the

---

[2] To state a tortious interference claim under Massachusetts law, plaintiff must allege: (1) a contract with a third party; (2) defendant knowingly induced the third party to break that contract; (3) defendant's interference, in addition to being intentional, was improper in motive or means; and (4) defendant's actions damaged plaintiff.  *See Buster v. George W. Moore, Inc.*, 783 N.E.2d 399, 414 (Mass. 2003).  To state a claim for tortious interference with contract under Colorado law, a plaintiff

Court applies the law of the forum state, here Colorado. *See SELCO Community Credit Union v. Noodles & Co.*, 267 F.Supp.3d 1288, 1292 (D. Colo. 2017). As discussed below, Plaintiffs' tortious interference claim against EchoStar fails for multiple reasons.

ARGUMENT

**A.      The First Amended Complaint Fails Adequately To Plead That EchoStar Caused DISH Wireless To Assert Any Contractual Defenses**

American Towers has not alleged at all, much less adequately, that EchoStar "caused" DISH Wireless to assert DISH Wireless's own defense to liability under the SCA. To the contrary, American Towers repeatedly pleads that it was DISH Wireless, not EchoStar, that caused its defenses. *See, e.g.*, FAC ¶ 5 (DISH Wireless claimed "to be excused from its contractual obligations…under the [SCA]"); ¶ 13 ("DISH [Wireless] cannot now claim that performance is excused"). The FAC does not include a single well-pled, non-conclusory allegation of EchoStar "caus[ing]" DISH Wireless, a separate company, to do anything. The sole allegations against EchoStar are that it "orchestrated DISH [Wireless]'s breach of the SCA, the SCA-Governed Licenses, and the Non-SCA Agreements as part of its global scheme to use its highly profitable,

---

must allege (1) existence of a valid contract between plaintiff and a third party; (2) knowledge by the defendant of this contract, or knowledge of facts that should lead him to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach by the third party; (4) action by the defendant that induces a breach; and (5) damage to the plaintiff. *Nairn v. JPMorgan Chase & Co.*, 2025 WL 4091216, at *6 (D. Colo. Feb. 12, 2025).

7

multi-billion dollar [Required Sales Transactions.]"   FAC ¶¶ 168; 171.   But these conclusory allegations lack any factual specificity as to what EchoStar actually did to "orchestrate" DISH Wireless's alleged breach with its alleged conduct.  *See Centimark Corp. v. Hilfer*, 2026 WL 145713, at \*11 (D. Colo. Jan. 20, 2026) (dismissing tortious interference claim and agreeing with defendants' argument that "allegation that defendants encourag[ed], allow[ed], and assist[ed] [counter party] to breach…[agreement] is conclusory and insufficient to support a plausible claim"); *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1179 (D. Colo. 2019) (allegations that defendants "plot[ted]" with former employee to "steal" plaintiff's business and "induced" employee to breach his employment agreement were insufficient); *Eaton Vance Senior Income Tr. v. Saba Cap. Master Fund, Ltd.*, 2021 WL 2785120, at \*6 (Mass. Super. Ct. Apr. 7, 2021) (dismissing tortious interference claim where allegations did "not plausibly suggest that [defendant] did anything to induce [breach]" and, "[w]ithout active participation in alleged breach of contract," a tortious interference claim cannot survive); *see also Tufco L.P. v. Reckitt Benckiser (ENA) B.V.*, 2023 WL 4304751, at \*8 (E.D. Wis. June 30, 2023) (dismissing tortious interference claim where claimant asserted threadbare allegations that parent caused subsidiary to "falsely claim force majeure").

Instead, American Towers simply infers that, as a parent company, EchoStar must have given some unidentified amount of "direction."  *See, e.g.*, FAC ¶¶ 20, 147, 224.  But alleged knowledge that a subsidiary has raised a contract defense does not

8

constitute tortious interference, nor can American Towers simply infer that, as a parent company, EchoStar must have "directed" DISH Wireless to take any particular act. Indeed, under American Towers' theory, every parent company would be liable to its subsidiaries' contract counterparties if those subsidiaries raised liability defenses. This is not the law. Instead, "[t]he test for holding a parent corporation liable for tortious interference ha[s] to be high or every-day consultation or direction between parent corporations and subsidiaries about contractual implementation would lead parents to be always brought into breach of contract cases." *James Cable, LLC v. Millennium Dig. Media Sys., LLC*, 2009 WL 1638634, at *4 (Del. Ch. June 11, 2009); *PPL Corp. v. Riverstone Holdings LLC,* 2019 WL 5423306, at *13 (Del. Ch. Oct. 23, 2019).

**B.    The First Amended Complaint Fails To Plead Tortious Interference Because It Is Not A Tort To Assert A Defense To Contractual Performance**

In addition to not pleading that EchoStar "aided" DISH Wireless to assert contractual defenses against American Towers, such conduct would not be tortious. Asserting a contractual defense—disputed or not—does not constitute tortious interference because it is not wrongful. American Towers cannot avoid contractual defenses by turning them into torts. This is not how litigation works.

*Tufco* is on point. There, the plaintiff alleged that Griffin—the parent company of Tufco—tortiously interfered with Tufco's agreement by "causing or directing" its subsidiary to decline performance and to "falsely claim force majeure." 2023 WL

9

4304751, at *8. The court dismissed the claim, finding that there were "no allegations of wrongful conduct by [the parent]" and holding that conclusory allegations of direction did not "provide the specificity required to cross the threshold from speculative to plausible." *Id.*; *see also Downtown Aspen Invs. v. Aspen Legacy Holdings*, 2011 Colo. Dist. LEXIS 2143, at *14–15 (Colo. Dist. Ct. Nov. 29, 2011) (dismissing tortious interference claim, noting that alleged "wrongful declaration of default…would not amount to a fraudulent misrepresentation or illegal conduct"); *United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 24 (Mass. 1990) (no tortious interference claim where defendant advised customer to repudiate contract for legitimate financial reasons); *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) ("inducing a contract obligor to do what it has a right to do is not actionable interference").

Additionally, the FAC includes no well-pled facts as to how the assertion of the disputed force majeure itself could have caused the *breach* of American Towers' SCA with DISH Wireless. *See, e.g.*, FAC ¶¶ 216, 217. Rather, the well-pled facts show that it was the sales of spectrum that caused DISH Wireless's inability to perform because it no longer had access to the spectrum. FAC ¶¶ 146, 147. A *later* force majeure notice sent by DISH Wireless describing those *prior* events did not cause the alleged breach, it explained the defense. In short, American Towers' conclusory allegation that DISH Wireless's invocation of force majeure was "baseless" (FAC ¶ 147) is a litigation position, not a tort.

**C.    The First Amended Complaint Fails To Plead That EchoStar Acted With The Specific Intent To Harm American Towers' Contract**

To show "intentional" interference, American Towers must plead that the defendant acted for the purpose of causing the alleged breach. *Redcloud Cap., LLC v. Fruition Partners, LLC*, 2022 WL 20087990, at \*4 (Colo. Dist. Ct. June 27, 2022). In *Redcloud*, the court dismissed a tortious interference claim because plaintiffs failed to allege that the defendants intended to cause the breach—as opposed to merely intending to commit the underlying act. *Id.* at \*4 (finding that "knowledge alone is not enough to establish intent" and "[plaintiff] must also demonstrate in the pleadings that [defendant] intended to cause [third-party] to breach the [agreement]"). The court emphasized that the focus of the intent element is on the intended result, not the intended conduct: "The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability...even if it has the unintended effect of deterring the third person from dealing with the other." *Id.* (quoting Restatement (Second) of Torts § 766, cmt. h). Because the plaintiffs alleged only that the defendants knew of the contract and intentionally engaged in conduct that would incidentally result in a breach—not that they specifically intended to cause a breach—the court found no tortious intent. *Id.*

The FAC does not even try to allege that EchoStar specifically intended to disrupt the SCA by undertaking the Required Sales Transactions. To the contrary, American Towers alleges that EchoStar pursued its own "business decision" by

11

selling assets worth "$40 billion" as "a business strategy" to protect its interest in its spectrum investment.  FAC ¶¶ 4 (EchoStar's actions were "a voluntary, strategic, and highly profitable business decision"), 6 (EchoStar…stands to receive $40 billion…"to further line its pockets"), 134 ("EchoStar made a strategic and highly lucrative business decision"), 140 (same), 141 (same), 145 (same).  The fact that the Required Sales Transactions may have some downstream effect on EchoStar's subsidiary's contract simply cannot establish tortious intent.  *See, e.g.*, *Insight Glob. LLC v. McDonald*, 2018 WL 2092486, at *4 (D. Colo. May 3, 2018) (dismissing interference claim because the defendant's knowledge of employee's contractual obligations to former employer did "not indicate how [the defendant] induced [the former employee] to breach them").

### D.   The First Amended Complaint Fails To Plead Improper Interference

The FAC also fails adequately to allege improper conduct.  To satisfy the "improper" element, courts consider factors such as "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."  *Fundient Inv. LLC v. Ouiby, Inc.*, 2024 WL 3936668, at *3 (D. Colo. Aug. 26, 2024).

Courts have consistently held that a party pursuing its own business interests is not improper, and does not tortiously interfere with another's contracts.[3]  *See Covelo Clothing, Inc. v. Midcap Credit LLC*, 2018 WL 11714638, at *5 (Colo. App. Ct. Mar. 1, 2018) (no tortious interference where defendant engaged in sale "to protect its own business interests"); *S.J. Glauser DCJB, LLC v. Porsche Cars N. Am., Inc.*, 2006 WL 1816458, at *12 (D. Colo. June 30, 2006) (no tortious interference where defendant's conduct constituted "potentially valid business position"); *see also Hamann v. Carpenter*, 2018 WL 2012689, at *3 (D. Mass. Apr. 30, 2018) (dismissing tortious interference claim because allegations of "economic self-interest" do not establish improper conduct); *Rodden v. Savin Hill Enter., LLC*, 2016 WL 1688688, at *8 (Mass. Super. Ct. Apr. 21, 2016) (dismissing tortious interference claim because allegations of "financial self-interest…will not qualify as improper motive"); *TalentBurst, Inc.* v. *Collabera, Inc.*, 567 F. Supp. 2d 261, 269 (D. Mass. 2008) (dismissing tortious interference claim because "[a]dvancement of one's economic interest...is not an improper motive").

Here, the FAC alleges that EchoStar sold spectrum licenses for billions of dollars in "highly profitable" and "voluntary, strategic" transactions as part of a

---

[3] American Towers' conclusory allegation that "EchoStar's wrongful actions do not serve any legitimate business purpose for DISH [Wireless], nor do they protect any legitimate business interest of EchoStar" is not sufficient to overcome the overwhelming authority to the contrary.  FAC ¶ 225; *see also Bourne v. Gardner*, 270 F. Supp. 3d 385, 390 (D. Mass. 2017) (dismissing tortious interference claim because "conclusory allegations…are not sufficient to state a claim upon which relief can be granted").

13

"business decision," and that as a result of these sales, DISH Wireless no longer had access to the spectrum and invoked force majeure and frustration of purpose defenses under the SCA. *See, e.g.*, FAC ¶¶ 4 ("EchoStar made a voluntary, strategic, and highly profitable business decision to monetize its spectrum and downsize DISH's Boost Mobile business."), 134 ("EchoStar made a strategic and highly lucrative business decision: EchoStar decided to enter into a series of transactions to sell off key spectrum licenses to third parties."), 140 ("This decision to transition Boost Mobile to a hybrid MVNO model is, yet again, another strategic business decision solely within the control of EchoStar and its affiliates."). This is precisely the sort of "business purposes" conduct that does not support an "improper" interference.

*Covelo Clothing* is instructive. In that case, the Colorado Court of Appeals affirmed dismissal of a tortious interference claim where the defendant seized and sold collateral to protect its own business interests, incidentally, disrupting the plaintiff's contracts with third-party creditors. *Covelo Clothing,* 2018 WL 11714638, at \*5. The court found no improper conduct because the defendant's actions were "equally consistent with nontortious explanations for its conduct—namely attempting to protect its own business interests." *Id.* So too here. EchoStar's alleged monetization of its spectrum assets for billions of dollars is precisely the kind of business interest that cannot establish improper motive. *See id.*; FAC ¶¶ 4, 134, 140.

And even if the FAC had sufficiently pled that EchoStar directed DISH Wireless to assert the contract defenses against American Towers, and it does not,

14

such conduct would not be improper.  *See supra* Sections A and B; *Downtown Aspen*,

2011 Colo. Dist. LEXIS 2143, at \*14–15 (no tortious interference because alleged

"wrongful declaration of a default…would not amount to a fraudulent

misrepresentation or illegal conduct").

### E.    American Towers' Allegations Establish That EchoStar's Conduct Was Privileged

The tortious interference claim separately fails under Colorado law because

any such alleged interference would be protected by the financial interest privilege,[4]

which applies where the defendant (i) had a legitimate business interest in the

challenged conduct and (ii) employed no wrongful means in pursuing it.[5]

*First*, the FAC clearly alleges EchoStar had a legitimate business interest in

the challenged conduct.  *See, e.g.*, FAC ¶¶ 4, 134, 140, 141, 145; *see also supra* Sections

---

[4] Appellate and trial courts have recognized a financial interest privilege.  *See GT Res. LLC v. Black Hills Corp.*, 2023 WL 12052529, at \*8 (Colo. App. Oct. 19, 2023) (reversing for failure to instruct jury on privilege); *Rodriguez v. Bar-S Food Co.*, 539 F. Supp. 710, 718 (D. Colo. 1982); *Downtown Aspen*, 2011 Colo. Dist. LEXIS 2143, at \*14–15 (dismissing tortious interference claim under privilege).  None of these courts differentiated between the privilege's application to prospective relations or existing contract claims.  *See GT Res.*, 2023 WL 12052529, at \*10 (noting that "a parent company's interference with a ***subsidiary's contract*** is privileged") (emphasis added); *Rodriguez*, 539 F. Supp. at 718 (discussing privilege in tortious interference with existing contract).

[5] While some courts in Colorado have found the financial interest privilege to be an affirmative defense, *see Rodriguez*, 539 F. Supp. at 718, the Tenth Circuit has explained that dismissal based on an affirmative defense is appropriate, where, as here, "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1268 (10th Cir. 2021); *see also Slayton v. Bayfield Sch. Dist.*, 2024 WL 4979422, at \*2–4 (D. Colo. Dec. 4, 2024) (dismissing complaint because affirmative defense is "apparent on the face" of complaint).

C, D. These allegations are quintessential financial-interest conduct. *See Downtown Aspen*, 2011 Colo. Dist. LEXIS 2143, at *13–15 (dismissing tortious interference claim under "financial interest" privilege); *Ascente Bus. Consulting, LLC v. DR myCommerce*, 2018 WL 3597674, at *6 (D. Minn. July 26, 2018) (dismissing interference claim against parent where financial interest was apparent on face of complaint); *accord Shearin v. E.F. Hutton Grp. Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("The privilege arises when the parent pursues lawful action in the good faith pursuit of its profit making activities.").

*Second*, American Towers has not pled that EchoStar employed wrongful means. Colorado courts define "wrongful means" as including "physical violence, fraudulent misrepresentation and threats of illegal conduct." Restatement (Second) of Torts § 767, cmt. c; *see also Fundient*, 2024 WL 3936668, at *3. American Towers alleges no such conduct by EchoStar. *See Fundient*, 2024 WL 3936668, at *3 (conclusory allegations of improper interference without alleging threats, economic pressure, violation of business norms, or other wrongful means are insufficient). To the contrary, American Towers alleges the Required Sales Transactions were voluntary and undertaken by EchoStar as a business decision for its own economic interests, and raising a defense to a contract is not unlawful. *See, e.g.*, FAC ¶¶ 4, 134, 140, 141, 145; *supra* Section B.

16

## CONCLUSION

For the foregoing reasons, EchoStar respectfully requests that the Court dismiss the FAC with prejudice and grant such further relief as the Court deems proper.

Dated:  July 20, 2026                      Respectfully submitted,


*/s/ Glenn M. Kurtz*
Hugh Q. Gottschalk
Jacob A. Rey
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:  303.244.1879
Email: gottschalk@wtotrial.com
            rey@wtotrial.com

Glenn M. Kurtz
Joshua D. Weedman
Robert E. Tiedemann
Camille M. Shepherd
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: 212.819.8200
Email: gkurtz@whitecase.com
        jweedman@whitecase.com
        rtiedemann@whitecase.com
        camille.shepherd@whitecase.com

Attorneys for EchoStar Corporation

17

**CERTIFICATE OF SERVICE ECF**

I HEREBY CERTIFY that on July 20, 2026, I electronically filed the foregoing Defendant EchoStar Corporation's Motion to Dismiss Plaintiffs' First Amended Complaint with the Clerk of Court using the ECF system which will serve notice on all counsel of record in this case.

*/s/ Glenn M. Kurtz*

Glenn M. Kurtz